[No. 9347.    Department One. — December 23, 1885.]

## B. F. DAHL ET AL., RESPONDENTS, v. JAMES PALACHE ET AL., APPELLANTS.

PROTESTANT EPISCOPAL CHURCH — PARISH — ELECTION OF VESTRYMEN — NOTICE OF. — The proceeding was brought by the plaintiffs, claiming to be the duly elected vestrymen of St. Mark's parish, to compel the defendants to surrender the temporalities and church building belonging to the parish, and to restrain them from further acting as the vestrymen thereof. The parish in question is a voluntary religious association, subject to the constitution, canons, and regulations of the Protestant Episcopal Church of the United States, and of the diocese of California. A canon of the church requires that the election of vestrymen shall be held on Easter Monday of each year, or as soon thereafter as practicable, and that notice of the election shall be given during divine service upon the Sunday previous thereto. The election under which the plaintiffs claim was not held on Easter Monday, and the notice thereof was given on the preceding Sunday at a meeting of the congregation, which took place several hours before the regular time for divine service. *Held*, that the notice was insufficient, and that the election was void.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

Proceedings by *mandamus*. The facts are stated in the head-note and opinion of the court.

*Stanly, Stoney, & Hayes*, and *Philip Teare*, for Appellants.

*Ben Morgan*, for Respondents.

Ross, J. — At least one point made on behalf of the defendants is fatal to plaintiffs' claim that they are the duly elected vestrymen of the parish in question. The bill of exceptions recites: That on the trial evidence was given showing that the parish of St. Mark's is a voluntary religious association or congregation organized under and subject in all things to the constitution, canons, regulation, and discipline of the Protestant Episcopal Church of the United States, and of the diocese of California, and was such from the twenty-ninth day of May, 1882; that said parish has never been incorporated; that on and before the said 29th of May it was known as the

Bishop Berkeley mission, and was under the control of the bishop of the diocese and the board of missions thereof; that by the canons of said Protestant Episcopal church regulating such matters, the minister in charge of such mission was appointed by the said board of missions on the nomination of the bishop, and was subject to removal by the bishop at any time; that on the twenty-ninth day of May, 1882, the Rev. E. S. Greene was the missionary in charge of said mission; that on that day the said mission was, with the previous consent of the bishop of the diocese, and in pursuance of the canons of the church, regularly organized into and became a parish under the name of St. Mark's parish, and at the same time the defendants were duly elected vestrymen of the parish, to serve until their successors should be duly elected; that one of the duties of the vestry was to elect a rector to take charge of the spiritual affairs of the parish, which duty was and is regulated by sections 1, 2, and 3 of Canon 5, which read as follows:—

"CANON 5.—THE RECTOR.

"Sec. 1. The rector of a parish shall be elected by a majority of all the vestry, duly convened after legal notice, specifying such election to be the object of the meeting.

"Sec. 2. Upon the election of rector, or of an assistant minister, the church-wardens shall give immediate notice thereof to the ecclesiastical authority of the diocese, whereupon the person elected may enter upon the duties of his calling; *provided*, that the said authority and the bishop, acting by and with the consent of the standing committee of the diocese, may veto said election, in which event the election shall be null and void.

" Sec. 3. 1. Whenever the rectorship of a parish becomes vacant, it shall be the duty of the vestry to give immediate notice to the ecclesiastical authority.

"2. The ecclesiastical authority may supply by appointment such vacancy until a rector shall be elected."

That immediately after the organization of the parish and the election of the defendants as vestrymen, a meeting of four of the five vestrymen-elect was held, without any previous notice whatever of such meeting, and without the knowledge of the other vestryman that he had been so elected; at which meeting a resolution was adopted that the Rev. E. S. Greene be elected rector of the parish, who consented thereto, he being present at the meeting; that no notice of such election was ever given to the bishop, who was then and still is the ecclesiastical authority of the diocese, nor was any action taken by the bishop with respect to such election before the appointment by the bishop of the Rev. David McClure to supply the vacancy in said rectorship, as hereinafter stated; that on the twenty-fourth day of July, 1883, at a meeting of the vestry of the parish, regularly held, a resolution was adopted rescinding the resolution electing the Rev. E. S. Greene as rector, and declaring the rectorship of the parish vacant, and directing the clerk of the vestry to notify the bishop of the diocese of the vacancy, and to request him to appoint a minister to supply it; that notice of such action was given to the bishop and to the Rev. E. S. Greene; that thereafter, and before the twenty-ninth day of July, 1883, the said bishop, as the ecclesiastical authority of the diocese, did authorize and direct the Rev. David McClure to supply the vacancy until a rector should be elected, notice of which was given to the said Rev. David McClure, and to the vestry, and to the said Rev. E. S. Greene; that according to the canons and regulations of the said Protestant Episcopal church the temporalities of a parish are managed by vestrymen, whose duties, time, and manner of election and term of office are prescribed by sections 1 and 2 of Canon 4, which read as follows:—

" CANON 4.—THE VESTRY.

" Sec. 1. On Easter Monday of each year, or as soon thereafter as practicable, there shall be an election of

not less than three nor more than eleven vestrymen and
trustees, or vestrymen and directors (*provided*, that any
parish now in existence may elect such number of ves-
trymen as their articles of incorporation may require),
the same being at least twenty-one years of age, to man-
age the temporalities of the parish, who shall have power
to fill vacancies in their own body, and shall continue in
office until their successors are duly elected. Notice of
such election shall be given during the divine service
upon the Sunday previous thereto.

"2. The election of vestrymen shall be by ballot, and
any male person of twenty-one years of age, who for the
previous sixty days shall have been registered a commu-
nicant, and any male person of like age, who shall have
been a member of the congregation for a like period,
and has regularly contributed to the support of the
parish, shall be entitled to vote."

That on July 29, 1883, the hour of 11 o'clock was and
during the existence of said parish always had been the
time of commencing the Sunday morning divine service,
and no other or different hour had been appointed or
announced for such service for that day. That, without
previous notice to the congregation of any change of the
hour of service, and knowing that the bishop had ap-
pointed the Rev. David McClure to officiate as minister
in said parish, and that he was expected to hold divine
service in the said church at the regular hour of 11 A. M.
of said twenty-ninth day of July, 1883, the said Rev. E. S.
Greene did, about the hour of 9 o'clock in the morning
of that day, enter the said church and thereupon com-
menced to hold the services of said Protestant Episcopal
Church, and intentionally continued and protracted the
same to an unusual extent, and until after the hour of
11 o'clock, and after the arrival of the said Rev. David
McClure, and refused to suspend said services, and pre-
vented the said Rev. David McClure from officiating.
That while the Rev. E. S. Greene was so officiating in

said church, and before the said regular hour for morning service, he gave notice to the persons present and attending said services that on Monday, July 30, 1883, at 8 P. M., an election would be held in said church building of five vestrymen, to serve until their successors should be elected; that on Monday evening, July 30, 1883, said church and building was locked and the key thereof was in possession of the marshal of the town of Berkeley, and access thereto could not be had, and such election could not be held therein; that at the hour named in said notice, a meeting of certain members of said parish was held at the residence of J. B. Whitcomb, on the same street with said building, but distant therefrom about two blocks; that said meeting was held in the dining-room of said residence, and the Rev. E. S. Greene presided; that the number of persons then present and taking part in the proceedings were eight or ten, including the five plaintiffs; that all of the persons so participating were qualified to vote for vestrymen of the parish; that the plaintiffs were the only persons nominated for the office of vestrymen at said meeting; whereupon a motion was made and carried,—no one dissenting,—that the secretary of the meeting cast the ballot for those present in favor of the plaintiffs. That the secretary did then and there prepare such ballot and deposit the same in a hat, and thereupon the plaintiffs were declared duly elected vestrymen of said parish. That no election of vestrymen therefor had been held on Easter Monday, 1883, or at any time since the election of the defendants in 1882. That no request, at any time, was made by any one that the defendants, or any of them, as the vestry, or as vestrymen, should call an election, or cause an election to be held for their successors, and neither of them had any notice or knowledge of said proposed election on the 30th of July. That on Easter Monday, 1883, and for some time thereafter, and until a short time before the alleged election of the plain-

tiffs, it was understood and believed by the vestrymen and congregation of St. Mark's parish that the steps taken to organize the said parish had been incomplete and inadequate, and that the parish was still a mission.

The facts above detailed were proved in the court below, according to the bill of exceptions contained in the record. Concerning the propriety of the proceedings it is not for us to speak. And but little need be said in regard to the law applicable to the facts.

As has been seen, the canon provides that an election of vestrymen shall be held "on Easter Monday of each year, or as soon thereafter as practicable," and it is expressly provided that "notice of such election shall be given during divine service upon the Sunday previous thereto." Whether an election on Easter Monday would or would not be valid without notice thereof need not be determined, but we think that it does not admit of doubt that notice of an election, not so held, is requisite to its validity.

We need only inquire further, Was the notice given by the Rev. Mr. Greene at the services inaugurated by him at 9 o'clock in the morning of July 29th the notice required by the canon of the church? Was the service commenced and conducted by him at the time and in the manner stated in the proof the "divine service" spoken of in the canon? There can be but one answer to this, and that must be in the negative.

Judgment reversed and cause remanded.

McKEE, J., and McKINSTRY, J., concurred.